[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 541 
Appeal from an award in condemnation arising out of the widening of Michigan avenue, Detroit.
Proceedings were instituted November 19, 1930. December 23, 1935, a jury was duly impaneled and sworn and the case subsequently adjourned to January 6, 1936. From January 6 to January 14, 1936, the jury was to view the premises. The trial occupied many days from January 20, 1936, until October 13, 1936, when the jury, having reached their verdict, were discharged.
The F. W. Woolworth Company was the holder of premises under a lease executed January 30, 1924, expiring April 30, 1944, under which it was to pay a yearly rental of $5,400, payable in equal monthly payments of $450 each. There was a provision in the lease for the suspension of rent in case of the total destruction of the building. The F. W. Woolworth Company was also the holder of premises under a lease dated September 21, 1923, expiring April 30, 1944, under which it was to pay rent at the rate of $7,500 a year, in equal monthly payments of $625 on the first of each current month. This lease was similar to the one above mentioned. About these leases there is no controversy. Neither lease made provision *Page 543 
for a reduction of rent in case of condemnation of the leased property.
The Ansonia Company, a Michigan corporation, became the holder of the title to the premises, and appeals from the award of damages, alleging (1) the jury erred in making an award to the F. W. Woolworth Company for damages to its leasehold; (2) in assessing damages to the leasehold, the jury erred in accepting as a basis of computation the allowance of diminished value of leasehold in direct proportion to the diminution of the area of the land; (3) in assessing the value of said leasehold, the jury erred in failing to reduce the award to the lessee to the present value of the losses it would in the future sustain; (4) in assessing the value of said leasehold, the jury erred in awarding the lessee damage to the leasehold commencing with the date of the verdict rather than the date of the actual deprivation of the full use of the leasehold by the lessee; and (5) the court erred in denying the Ansonia Company's motion for a new trial.
Evidence was offered by the city of Detroit that the title in fee simple to parcel 68, comprising 100.1 front feet and 113 feet depth, was in the Ansonia Company, and that F. W. Woolworth Company occupied 60.1 front feet, to the full depth of said land, as lessee. Evidence of the value of the buildings upon said land was offered by the city showing the first buildings occupied by the Landau Company on 40 feet of land had a present reconstruction cost of $24,150.86, which was depreciated 40 per cent. leaving its present value $14,490.57; that the value of the building remaining after the taking was $4,881.67, and the cost of rehabilitating the same $2,400, giving the value of the building when finally rehabilitated $7,281.67. Deducting the latter sum from $14,490.57 left a balance of $7,208.90. To ascertain the damage, *Page 544 
there was added to the latter figure the cost of rehabilitation of $2,400, leaving the damages to the Landau store on parcel 68 as $9,608.90. The second building occupied by the F. W. Woolworth Company had a frontage of 60.1 feet and a reconstruction cost of the part taken of $15,475.18, which was depreciated 40 per cent., which gave a present value of $9,285.11; that the reconstruction cost of the part remaining was $11,987.56, which, depreciated 40 per cent., left its present value $7,192.56. This gave the present value of these buildings as $16,477.67, and the cost of rehabilitating the remainder $2,700, which would bring the value of the remainder as rehabilitated to $9,892.56. And taking the present value of the front as $16,477.67 and deducting the value after rehabilitation of $9,892.56 left $6,585.11, to which was added the cost of rehabilitation of $2,700, making the total damage to this building of $9,285.11.
Combining the value thus arrived at for the two buildings, we have the following figures:
Value of Landau parcel before taking ..............$14,490.57 Value of Woolworth parcel before taking ........... 16,477.67 ---------- $30,968.24
Value of Landau parcel after taking ...............$ 7,281.67 Value of Woolworth parcel after taking ............ 9,892.56 --------- $17,174.23
Total value before taking .........................$30,968.24 Less total value after taking ..................... 17,174.23 --------- Difference ........................................$13,794.01 Add cost of rehabilitation ........................ 5,100.00 --------- $18,894.01 *Page 545 
The city offered as a witness Mr. Edward J. Strata who testified in relation to the value of the land involved, a summary of whose testimony was as follows:
Present value of land ...................... $118,504.38 Present value of building .................. 30,968.24 ----------- Total value of land and building ........... $149,472.62
Value of land remaining after taking ....... $ 80,172.08 Value of building remaining after taking ... 17,174.23 ----------- Total value of remainder ................... $ 97,346.31
Value of the land and buildings taken is ... $ 52,126.31 Cost of rehabilitation ..................... 5,100.00 ----------- Total damage from taking ................... $ 57,226.31
Subsequently upon presentation of the case to the jury, counsel for the city agreed the cost of rehabilitation was deducted from the damages and the figures given by the city's witnesses as to the damage to the building should be increased by the cost of rehabilitation in each instance. This would give the damages to the Landau building, according to the city's figures, $12,008.90; and the damages to the Woolworth building $11,985.11.
On June 17, 1936, in the absence of the Ansonia Company, the Woolworth Company introduced testimony as to the damages to its leasehold interest. Such witnesses were cross-examined by counsel for the city. And on June 18, 1936, in the absence of the Woolworth Company, the Ansonia Company offered testimony indicating its land damage to be $80,600; that the damage from the taking would be $76,000; and that the total damage to both buildings was $38,832.76. *Page 546 
The jury returned a verdict fixing the damages to the land at $41,477 and the damage to the buildings at $26,843, making a total award of damages and award for the land and buildings of $68,320. Of this total, the jury awarded to the Woolworth Company for damage to its leasehold the sum of $46,246.50. This award was confirmed by the court and the real controversy is between the Woolworth Company and the Ansonia Company as to the division of the award of damages and compensation.
Private property shall not be taken for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law. Const. 1908, art. 13, § 1.
"When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders residing in the vicinity of such property, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." Const. 1908, art. 13, § 2.
Both the necessity for the taking and the compensation, so far as the controversy here is concerned, was to be ascertained by a jury of 12 freeholders residing in the vicinity of such property.
Proceedings of the kind here under consideration are not strictly judicial, but inquisitorial. The determination of necessity and the award of compensation in case necessity is found is not to be made by the court, but by a jury of 12 freeholders residing in the vicinity of such property. Such jury when impaneled according to law is the constitutional tribunal for the *Page 547 
trial of controversies arising out of the exercise of the power of eminent domain. Condemnation proceedings are inquisitorial in their nature. The constitutional tribunal for the determination of the issues is a jury, the judge, after the jury is impaneled, acting in an advisory capacity. In reWidening of South Dix Avenue, 262 Mich. 233.
From the very nature of the constitutional provisions, the jury is judge both of the law and facts. Chicago, D. C. G. T.J. R. Co. v. Jacobs, 225 Mich. 677; In re Widening HarperAvenue, 237 Mich. 684; In re Owen and Memorial Parks in City ofDetroit, 244 Mich. 377 (61 A.L.R. 190); In re Widening ofBagley Avenue, 248 Mich. 1; In re Board of Education of City ofGrand Rapids, 249 Mich. 550.
The question of necessity is for the determination of the jury. Village of Hamtramck v. Simons, 201 Mich. 458; City ofDetroit v. Judge of Recorder's Court, 253 Mich. 6; City ofAllegan v. Vonasek, 261 Mich. 16.
The proceedings, being inquisitorial in nature, the jury is not limited to the testimony introduced by the respective parties, but may view the premises. In re Widening of BagleyAvenue, supra.
The jury may listen to the opinion of witnesses, their estimates of value and their methods of arriving at the conclusion expressed. But the jury is not bound by the testimony alone. They are to exercise their judgment, based not only upon the testimony but their own knowledge gained from a view of the premises. They are not to be interfered with or dictated to by the judge. The jury are judges both of the law and facts. Toledo, A. A. G. T. R. Co. v. Dunlap, 47 Mich. 456; Port Huron South-Western R. Co. v. Voorheis, 50 Mich. 506; Grand *Page 548 Rapids, L. D. R. Co. v. Chesebro, 74 Mich. 466; In reWidening of Bagley Avenue, supra.
Many technical rules have been promulgated for determining value, none of which is important. The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion based upon a consideration of all the relevant facts in a particular case. It is in the final analysis only the effect of the relative human desire for compared objects expressed in terms of a common denominator.The Minnesota Rate Cases (Simpson v. Shepard), 230 U.S. 352
(33 Sup. Ct. 729, 48 L.R.A. [N. S.] 1151, Ann. Cas. 1916A, 18);International Harvester Co. v. Kentucky, 234 U.S. 216
(34 Sup. Ct. 853); Block v. Hirsh, 256 U.S. 135
(41 Sup. Ct. 458, 16 A.L.R. 165); In re Widening of Bagley Avenue, supra.
Where only part of a parcel is taken, just compensation is to be determined by the amount which the value of the parcel from which it is taken is diminished. The value of the part actually taken is allowed as direct compensation, but the decreased value of the residue of the parcel on account of the use made of the land taken is also allowable as compensation. Port Huron South-Western R. Co. v. Voorheis, supra; Fitzsimons Galvin,Inc., v. Rogers, 243 Mich. 649; Johnstone v. Railway Co.,245 Mich. 65 (67 A.L.R. 373); In re Widening of Bagley Avenue,supra. Where only a part of a building is taken, if the remaining portion is of great value and there can be advantageous reconstruction, rearrangement and new adjustment, then the cost of altering the building and all consequential damages because of such alteration, plus the value of the part taken, furnishes the rule for measuring the compensation to be awarded. If what remains *Page 549 
after a part is taken is worthless, the jury should allow the whole value of the building. If not, they should consider what may be done with the remainder and the cost of doing it.City of Detroit v. Loula, 227 Mich. 189; In re Widening ofBagley Avenue, supra.
With respect to the damages awarded in condemnation proceedings, it is not within the province of the court to review the question further than to see that the finding is supported by the evidence. Boyne City, G. A. R. Co. v.Anderson, 146 Mich. 328 (8 L.R.A. [N. S.] 306, 10 Ann. Cas. 283, 117 Am. St. Rep. 642). If the jury's award is within the evidence, it may not be disturbed on appeal. In re Petition ofthe City of Detroit for a Park Site, 227 Mich. 132. The proceedings before this court to review an award on condemnation is in the nature of certiorari and the award of damages should not be disturbed unless palpably contrary to the evidence. Flint P. M. R. Co. v. Railroad Co., 64 Mich. 350.
A tenant for years is the owner of an estate and is entitled to compensation for an injury done in taking his property for public use. In general terms, the proper measure of damages is the depreciation in the market value of the property caused by the condemnation. Two questions arise: What was the value of the property — that is, the value of the tenant's leasehold unaffected by the injury? And, what was the value at the time of the surrender as affected by the injury? The difference is the true measure of the compensation. Des Moines Wet WashLaundry v. City of Des Moines, 197 Iowa, 1082 (198 N.W. 486, 34 A.L.R. 1517). In strict terms, the tenant's recovery is restricted to the value of the unexpired term. It is the value of the unexpired term of the lease, less the rental reserve. In the *Page 550 
ascertainment of this value, it is impossible to specify all of the elements that enter into such a problem. All of them cannot be anticipated. Many of them are developed in the course of the litigation consequent upon the exercise of the right of eminent domain. They will vary with the character of the property affected and the uses to which it is applied. Des Moines WetWash Laundry v. City of Des Moines, supra. It will frequently happen that market value would be an unsatisfactory test of the value to a tenant of the leasehold interest. Standing alone, it is naturally no test at all and oftentimes it would have no market value. Des Moines Wet Wash Laundry v. City of DesMoines, supra.
"The question is, how to apply the rule for the estimation of damages occasioned by the condemnation of a leasehold interest. The decisions are not harmonious. Ordinarily, market value is the criterion, but in certain cases it is not the true standard by which to determine the value. It is difficult, if not impossible, to lay down a rule of universal application as to what may be considered as elements of damage, as the equities of the parties must more or less depend upon the particular facts and circumstances of each case. * * * This is particularly true as applied to a leasehold. Value must be determined by a consideration of the uses to which the property is adapted. All circumstances naturally affecting this value are open to consideration. * * *
"Every legitimate use to which it may be applied may be considered. Rental and use may be shown as tending to prove value. * * *
"An established trade or business connected with a location clearly enhances the value of a leasehold interest, and just compensation contemplates this fact." Des Moines Wet WashLaundry v. City of Des Moines, supra. *Page 551 
In Pierson v. H. R. Leonard Furniture Co., 268 Mich. 507
(98 A.L.R. 244) it is said:
"The measure of a lessee's damages for the condemnation of his leasehold interest is said to be the market value of the leasehold condemned, that is, the difference between the rental value of the remainder of the term and the rent reserved in the lease, or the actual value of the leasehold, where there is no market value. See In re DeLancey Street, 120 App. Div. 700
(105 N.Y. Supp. 779); Kafka v. Davidson, 135 Minn. 389
(160 N.W. 1021); Corrigan v. City of Chicago, 144 Ill. 537 (33 N.E. 746, 21 L.R.A. 212); Bales v. Railroad Co., 92 Kan. 771
(141 Pac. 1009, L.R.A. 1916C, 1090); Clarkson v. Skidmore, 46 N.Y. 297;Larkin v. Misland, 100 N.Y. 212 (3 N.E. 79); In re Williamand Anthony Streets, 19 Wend. (N.Y.) 678; Mayor and CityCouncil of Baltimore v. Gamse Bros., 132 Md. 290
(104 A. 429); Mason v. City of Nashville, 155 Tenn. 256
(291 S.W. 1074)."
"Where a leasehold estate is taken, it is well settled that the measure of damages is the fair market value of the estate so taken; or, if only a part thereof be taken, the measure of damages is the difference between the fair market value of the entire leasehold estate and the fair market value of the portion thereof not taken." Kafka v. Davidson, supra.
"The value to the owner of a lease, when he is paying the full rental value of the premises as rent, is the right to remain in undisturbed possession to the end of the term, and it is sometimes held that the loss resulting from the deprivation of this right is the proper measure of the tenant's compensation. In such case the value may depend upon the use made and the nature of the tenant's business." 1 Nichols on Eminent Domain (2d Ed.), p. 715. *Page 552 
The jury in a condemnation case is, as in other cases, the judge of the credibility of the witnesses and the truthfulness of their statements. The jurors hear the testimony, examine the property, consider the estimates placed upon the damages which should be awarded to the respective parties, and make a final determination. Like any other tribunal which is created for the determination of disputed questions of fact, their determination is final and this court may not disturb it so long as it is within the fair range of the testimony and of the facts which the jury may have learned in their examination of the property.
We cannot say from the record in this case, though we might not agree with the award made or the division thereof between the respective parties in interest, that the jury violated the law or misused the powers delegated to them by the Constitution in the determination of this case.
Award affirmed, with costs.
FEAD, C.J., and NORTH, WIEST, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred. BUTZEL, J., did not sit. *Page 553